UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CAR-FRESHNER CORPORATION and JULIUS SAMANN LTD., <br><br> Plaintiffs, <br><br> v. <br><br> VICTORY — 2000 EOOD; VALIO, LLC; and VALENTIN RAYTCHEV, <br><br> Defendants. | Case No. 2:14-cv-01471-RFB-GWF <br><br> **ORDER** |

**I.     INTRODUCTION**

Before the Court is Plaintiffs' Motion to Correct Clerical Mistakes and Oversight (ECF No. 41). For the following reasons, the Court grants Plaintiffs' Motion.

**II.    BACKGROUND**

Plaintiffs filed a Motion for Default Judgment on November 30, 2015. ECF No. 35. Defendants Valio, LLC and Valentin Raytchev did not respond to the motion and to this day have not appeared or responded in this action despite being served with a copy of the Summons and Complaint on September 17, 2014. See ECF Nos. 7, 8. The Clerk subsequently entered default against these Defendants on October 16, 2014 and October 22, 2014. See ECF Nos. 10, 33. This Court granted the Motion for Default Judgment on July 8, 2016. ECF No. 38.

Plaintiffs' Motion for Default Judgment sought a permanent injunction pursuant to the prayer for relief in Plaintiffs' Complaint. ECF No. 1. The Court's order granting default judgment did not issue an injunction or otherwise provide relief against Defendants. Plaintiffs now seek

correction of clerical mistakes in that order, and entry of a permanent injunction pursuant to the facts pled and prayer for relief in the Complaint.

### III. CLERICAL MISTAKES

"A court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). The Court finds that it made a clerical mistake in the spelling of Defendant "Valio, LLC" and in use of "Oasis" instead of "Valio, LLC and Valentin Raytchev." The Court has corrected these clerical mistakes in the revised order for default judgment and permanent injunction below.

### IV. RELIEF PURSUANT TO DEFAULT JUDGMENT

The court reviews the requirements for default judgment, and for the following reasons grants permanent injunctive relief pursuant to this revised order granting default judgment.

#### A. Procedural Requirements

The Federal Rules of Civil Procedure permit entry of default judgment against a Defendant not a minor or incompetent, who has not appeared personally or by representative, without enumerating any procedural requirements. Fed. R. Civ. P. 55(a)(2). The Clerk entered default against these Defendants on October 16, 2014 and October 22, 2014. See ECF Nos. 10, 33. This Court granted default judgment on July 8, 2016. ECF No. 38.

#### B. Legal Standard

The district court has discretion to grant or deny default judgment. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1993). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material *1472 facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The Court addresses each factor in turn.

**1. The Possibility of Prejudice to the Plaintiff**

Plaintiffs would suffer prejudice without default judgment because Defendants have failed to appear or otherwise respond, making judicial resolution of the claims presented impossible absent default judgment.

**2. Merits of the Claim**

Plaintiffs' complaint alleges federal trademark infringement under 15 U.S.C. § 1114-1118, federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a), federal trademark dilution under 15 U.S.C. § 1125(c), and state law mark dilution under NRS § 600.435, and common law trademark infringement.

The general rule upon entry of default by the court clerk is that "well-pled allegations in the complaint regarding liability are deemed true." Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) (citations omitted). "The district court is not required to make detailed findings of fact." Id.

**a. Well-Pled Facts**

Well-pled facts include the following:

For over 60 years, under license from Julius Samann Ltd. ("JSL") and its predecessors, Car-Freshner Corporation ("CFC") and its predecessors have manufactured and marketed products using the distinctive Tree designs as trademarks and corporate identifiers, including the world famous air fresheners in the distinct Tree design shape sold under the LITTLE TREES brand ( LITTLE TREES Air Fresheners ). As a result of their long and extensive sale across the United States, Plaintiffs' products are well known and well received. Id. at ¶ 11.

Plaintiffs' LITTLE TREES Air Fresheners are available in nearly sixty well-known fragrances and distinctive designs, including BLACK ICE and ICE BLUE. Id. at ¶ 12.

Plaintiffs own registered trademarks in three tree-shape designs for air fresheners, as well as in the names "Car-Freshner" and "Black Ice" used for car air fresheners. Id. at ¶ 13. Plaintiffs own common law trademark rights in and to its Tree designs and its "Car-Freshner," "Black Ice," and "Ice Blue" marks. Id. at ¶ 14.

1  The Tree designs and CAR-FRESHNER, BLACK ICE, and BLUE ICE marks
2  (collectively "Plaintiffs' Marks") are used extensively on a wide variety of air fresheners and
3  related products. Plaintiffs have spent, and continue to spend, significant amounts of time and
4  money developing, testing and promoting goods sold under Plaintiffs' Marks. Id. at ¶ 16.
5  As a result of the long, extensive and widespread use of the Plaintiffs' Marks, the general
6  consuming public in the United States recognizes these designs and marks as exclusively
7  associated with Plaintiffs and their high quality products." Id. at ¶ 18.
8  Plaintiffs' Registered Marks are famous under 15 U.S.C. 1125(c)(1), inherently distinctive
9  and/or have acquired distinctiveness, represent valuable goodwill, have gained reputation for
10  quality belonging exclusively to JSL, and are widely recognized by the general public of the United
11  States as designations of the source for Plaintiffs' products. Id. at ¶ 24.
12  Defendants Valentin Raytchev and Valio, LLC, have offered for sale air fresheners in the
13  United States using the marks BLACK ICE and BLUE ICE. Defendants' use of these marks is
14  identical to, or virtually indistinguishable from, Plaintiffs' BLACK ICE and ICE BLUE marks. An
15  example of Defendants' use of Plaintiffs' mark BLACK ICE is depicted in paragraph 39 of the
16  complaint. Id. at ¶ 39. Raytchev and Valio have also offered products using a nearly
17  indistinguishable variation
18  of Plaintiffs' CAR-FRESHNER trademark, depicted in paragraph 40 of the complaint. Id. at ¶ 40.
19  The Infringing Design and Defendants' infringing versions of the CAR-FRESHENER,
20  BLACK ICE and BLUE ICE marks are used in connection with Victory 2000's air freshener
21  products which were distributed, promoted, offered for sale, and sold throughout the United States
22  (collectively, the "Infringing Products"). Id. at ¶ 17.
23  Mr. Raytchev is either with, working on behalf of, or distributing for Victory 2000. Id. at
24  ¶ 46. Mr. Raytchev has directly sold the Infringing Products himself and through his company
25  Valio, as well as selling the Infringing Products through online marketplaces such as eBay. Id. at
26  ¶ 48.
27  On April 30, 2013, Plaintiffs wrote to Defendants demanding that they cease selling the
28  Infringing Products and using Plaintiffs' trademarks. Id. at ¶ 50. Raytchev responded on May 7,

1   2013 stating that all Infringing Products and their advertisements had been removed. Id. at ¶ 51.
2   On May 15, 2013, Plaintiffs again contacted Defendants for additional information so that a final
3   resolution could be reached. Id. at ¶ 52. On May 24, 2013, Raytchev responded that he had
4   complied with removing the Infringing Products and that he did not consider the matter worth
5   pursuing due to the low number of sales. He did not provide any information concerning the
6   number of sales, the extent of distribution, or the origin of the Infringing Products. Id. at ¶ 53.

7   As of May 24, 2013, Plaintiffs could not identify any further infringing sales, but they
8   continued to monitor Defendants' activities to ensure that they did not begin selling the Infringing
9   Products or using Plaintiffs' Marks after May 24, 2013. Id. at ¶ 54.

10   On December 10, 2013, Plaintiffs learned that Defendants had begun selling the
11   Infringing Products using Plaintiffs' Marks in contravention of his earlier statements. Id. at ¶ 55.
12   Among the Infringing Products that Defendants sold after May 24, 2013 were Infringing Products
13   which were shipped to Nevada. Id. at ¶ 56. The Infringing Products make use of Plaintiffs' Marks
14   without permission, authorization, or license from Plaintiffs. Id. at ¶ 58. Defendants were aware
15   of Plaintiffs and Plaintiffs' Marks when they distributed, promoted, offered for sale, and sold the
16   Infringing Products within the United States. Id. at ¶¶ 59-61.

### b. Lanham Act Trademark Infringement

Plaintiffs assert claims under the Lanham Act for mark infringement under 15 U.S.C. 1114(1) and unfair competition and false designation of origin under 15 U.S.C. 1125(a). In order to prevail on a trademark infringement claim under the Lanham Act, "a plaintiff must prove two basic elements: (1) it has a valid, protectable trademark, and (2) [the defendant's] use of the mark is likely to cause confusion." So. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 929 (9th Cir. 2014) (alteration in original) (internal quotation marks omitted). "The first of these basic elements is comprised of two sub-parts: the mark's protectability and the plaintiff's ownership of the mark." Id.

1                       **i.**      **Protectability**

2         Federal trademark registrations "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein[.]" 15 U.S.C. 1115.

        "Whether a mark is protectable depends on its degree of distinctiveness." Id. (internal quotation marks omitted). "Distinctiveness measures the primary significance of the mark to the purchasing public." Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010) (internal quotation marks omitted). There are five traditional categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. Id.; Zaffina, 762 F.3d at 929. Generic marks are not protectable, while suggestive, arbitrary, and fanciful marks are entitled to automatic trademark protection. Zaffina, 762 F.3d at 929. Descriptive marks are not eligible for automatic protection, but can "become protectable if they acquire a 'secondary meaning,' by becoming distinctive 'as used on or in connection with the applicant's goods in commerce.'" Id. (quoting 15 U.S.C. § 1052(f)); Zobmondo, 602 F.3d at 1113.

        "Generic marks are 'those that refer to the genus of which the particular product is a species.'" One Indus., LLC v. Jim O'Neal Distrib., Inc., 578 F.3d 1154, 1164 (9th Cir. 2009) (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)). Descriptive marks "directly describe the quality or features of the product." Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1058 n.19 (9th Cir. 1999). Suggestive marks, while "convey[ing] the impression of a good," nonetheless still "require[ ] the exercise of some imagination and perception to reach a conclusion as to the product's nature." Id. (citing the "Roach Motel" insect trap in Am. Home Prods. Corp. v. Johnson Chem. Co., 589 F.2d 103 (2d Cir. 1978), as an example of a suggestive mark). "Arbitrary and fanciful marks have no intrinsic connection to the product with which the mark is used; the former consists of words commonly used in the English language, whereas the latter are wholly made-up terms." Id. (citations omitted) (giving "Black & White"

- 6 -

scotch whiskey as an example of an arbitrary mark, and "Clorox" bleach as an example of a fanciful mark).

### ii. Ownership

"A party's ownership of a protectable mark is determined on the basis of priority of use in commerce. That is, the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." Zaffina, 762 F.3d at 930 (internal quotation marks omitted); see also 15 U.S.C. § 1127 ("For purposes of this chapter, a mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . ."). To establish priority of use, Defendants "must be able to prove a chain of title extending back to the original user of the mark." 3 McCarthy on Trademarks and Unfair Competition § 18:15 (4th ed.); cf. Fleischer Studios, Inc. v. A.V.E.L.A., Inc., 654 F.3d 958, 962-63 (9th Cir. 2011) (a complete chain of title is necessary to establish ownership of a copyright).

### iii. Likelihood of Confusion

In determining whether the defendant's use of the mark is likely to cause confusion, courts weigh eight factors, known as the Sleekcraft factors: "(1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." Zaffina, 762 F.3d at 930 (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir.1979)). No single one of the Sleekcraft factors is determinative, and courts consider the totality of circumstances in each case to resolve the likelihood-of-confusion inquiry. Zaffina, 762 F.3d at 930.

### iv. Discussion

Accepting all well-plead facts as true, Plaintiffs have established protectability and likelihood of confusion sufficient to show trademark infringement under the Lanham Act. Plaintiffs' complaint alleges that plaintiffs own registered trademarks in three tree-shape designs for air fresheners, as well as in the names "Car-Freshner" and "Black Ice" used for car air

1 fresheners. Compl. at ¶ 13. These registrations are prima facie evidence of the validity of the marks
2 per the terms of 15 U.S.C. § 1115. The Court further finds that the tree designs depicted in
3 paragraph 13 of the Complaint, and the names "Black Ice" and "Ice Blue" are arbitrary in that they
4 have no intrinsic connection to a product used to enhance the smell of a car interior, and that the
5 name "Car Freshner" is suggestive, as it is related to the purpose of the product, but it "requires
6 the exercise of some imagination" to discern the products nature. They are therefore entitled to
7 automatic trademark protection. See Zaffina, 762 F.3d at 929.

8 The Plaintiffs have adequately alleged ownership: "For over 60 years, under license from
9 JSL and its predecessors, CFC and its predecessors have manufactured and marketed products
10 using the distinctive Tree designs as trademarks and corporate identifiers, including the world
11 famous air fresheners in the distinct Tree design shape sold under the LITTLE TREES brand
12 (LITTLE TREES Air Fresheners )." Compl. at ¶ 11.

13 The totality of the circumstances, as laid out in well-pled facts in the Complaint, show a
14 likelihood of confusion. The third factor, similarity of the marks, weighs heavily in favor of a
15 likelihood of confusion. The complaint alleges that defendants copied exactly the name "Black
16 Ice," nearly exactly "Car Freshner"—changing only to "Car Freshener"—simply switched the
17 order of "Blue Ice" to "Ice Blue," and adopted a similar tree shape with rounded edges. Other
18 factors also weigh in favor of a finding of likelihood of confusion. Plaintiffs have pled that the
19 mark is strong as a result of years of earned good-will as well as depictions in advertising and
20 popular culture. The degree of similarity in the design and the names is highly suggestive of intent
21 to benefit from confusion as to the origin of the products.

22 Therefore, the Court finds that the well-pled facts establish federal trademark infringement,
23 providing grounds for default judgment on this claim.

24

25 **c. Lanham Act Unfair Competition and False Designation of**
26 **Origin**

27 Second, Defendants claim unfair competition and false designation of origin under Section
28 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The analysis of these claims "is oftentimes


identical" to infringement claims under Section 32 of the Act, 15 U.S.C. § 1114. Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 n.8 (9th Cir. 1999); see also Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 917 (9th Cir. 1980) ("Both statutes preclude the use of another's trademark in a manner likely to confuse the public about the origin of the goods."). The Court finds that the analysis is indeed identical here—in order to prevail on this claim, Defendants must establish ownership through priority of use and likelihood of confusion. Therefore, for the reasons the stated above, the Court finds that the well-pled facts establish federal trademark unfair competition, providing grounds for default judgment on this claim.

### d. Mark Dilution in Violation of the Lanham Act

"To prove a claim for dilution, a plaintiff must show (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." Jada Toys, Inc. v. Mattel. Inc., 518 F.3d 628, 634 (9th Cir. 2007) (citing 15 U.S.C. § 1125(c)(1)).

#### i. Famous and distinctive

In evaluating famousness, the Court considers the statutory factors: "(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) The extent of actual recognition of the mark; and (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register." 15 U.S.C. § 1125(c)(2)(A).  "Registration on the principal register creates a presumption of distinctiveness." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 876 (9th Cir. 1999).

#### ii. Used in Commerce

"[F]or a plaintiff to establish that the mark is being used in commerce (as per step two), the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark. In

1 order to be nearly identical, two marks "must be 'similar enough that a significant segment of the
2 target group of customers sees the two marks as essentially the same." <u>Jada Toys,</u> 518 F.3d at 634
3 (internal quotations and citations omitted).

### iii. Dilution by Blurring or Tarnishment

Subsection (c)(2) defines "dilution by blurring" as the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following: (i) The degree of similarity between the mark or trade name and the famous mark; (ii) The degree of inherent or acquired distinctiveness of the famous mark; (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) The degree of recognition of the famous mark; (v) Whether the user of the mark or trade name intended to create an association with the famous mark; and (vi) Any actual association between the mark or trade name and the famous mark." 15 U.S.C. § 1125(c)(2)(B).

The statue defines dilution by tarnishment as "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C).

### iv. Discussion

The well-pled facts establish mark dilution in violation of the Lanham Act. Plaintiffs have pled that the marks are "world famous" as a result of good will generated over 60 years of sales as well as advertising and depiction in popular culture. The tree designs, "Car Freshner" and "Black Ice" marks are registered trademarks. The Court has already found the marks to be distinctive for the purposes of the Lanham Act. Therefore, the Plaintiffs have established satisfaction of the famous and distinctive requirement of a dilution claim.

The Court further finds that the use in commerce requirement is met. The marks are "similar enough that a significant segment of the target group of customers sees the two marks as essentially the same." <u>Jada Toys,</u> 518 F.3d at 634. The names at issue are identical or nearly

identical, and the tree shapes are substantially similar and used in conjunction with the nearly identical names.

Plaintiffs have also established dilution by blurring per the statutory factors laid out in 15 U.S.C. § 1125(c)(2)(B). Here again the degree of similarly weighs heavily in favor of a finding for plaintiffs, as the marks used by defendants are sufficiently similar to plaintiffs' marks to cause confusion, and for an inference of intent to cause confusion. Plaintiffs have further alleged that the marks are "world famous" and widely recognized, and that the general public recognizes the marks as "exclusively associated with Plaintiffs and their high quality products." Compl. at ¶ 18.

Finally, Plaintiffs have pled that the Defendants began using the mark after it became famous. Plaintiffs allege that the mark is famous after being produced for nearly 60 years, and that violations occurred in the early 2000's and after. Compl. at ¶ 30.

Therefore, the Plaintiffs have established trademark dilution sufficient to grant default judgment on this claim.

### e. Mark Dilution under Nevada Revised Statute § 600.435

N.R.S. 600.435 states as follows:

> 1. Except as otherwise provided in subsection 4, the owner of a mark that is famous in [Nevada] may bring an action to enjoin commercial use of the mark by a person if such use:
>     (a) Begins after the mark has become famous; and
>     (b) Causes dilution of the mark.
> 2. In determining whether a mark is famous in this State, the court shall consider, without limitation, the following factors:
>     (a) The degree of inherent or acquired distinctiveness of the mark in this State.
>     (b) The duration and extent of use of the mark in connection with the goods and services with which the mark is used.
>     (c) The duration and extent of advertisement and promotion of the mark in this State.
>     (d) The geographical extent of the trading area in which the mark is used.
>     (e) The channels of trade for the goods or services with which the mark is used.
>     (f) The degree of recognition of the mark in the trading areas and channels of trade in this State used by the owner of the mark and the person against whom the injunction is sought.

>    (g) The nature and extent of use of the same or similar mark by other persons.
>    (h) Whether the mark is registered in this State or registered in the United States Patent and Trademark Office pursuant to federal law.
>
>    . . .
>
>    5. As used in this section:
>
>    . . .
>
>    (b) "Dilution" means a lessening in the capacity of a mark that is famous to identify and distinguish goods or services, regardless of the presence or absence of:
>       (1) Competition between the owner of the mark and other persons; or
>       (2) Likelihood of confusion, mistake or deception as to the source of origin of goods or services.

The Nevada Supreme Court has not analyzed the scope of a claim for Nevada trademark dilution. However, the legislative history of N.R.S. 600.435 suggests that this provision was modeled in part on the dilution provisions of the federal Lanham Act. See Nev. S. Comm. Min., Feb. 16, 2001 (statement from a Nevada attorney that the statute "follows similar provisions in the federal Lanham Act."); Nev. Assem. Comm. Min., Apr. 23, 2001 (testimony that the bill that would become N.R.S. 600.435 "emulated federal law"). This is supported by a comparison of N.R.S. 600.435 with the Lanham Act's dilution provisions, which identify substantially the same factors in making the determination of whether a mark is famous and distinctive. See N.R.S. 600.435(2); 15 U.S.C. § 1125(c)(2)(A).

i. **Discussion**

As the well-pled facts establish a violation under the substantially similar federal provision, with respect to a geographic scope encompassing the whole of the United States and not excluding Nevada, the Court finds that the Plaintiffs have established a violation of NRS 600.435 sufficient for a finding of default judgment in its favor.

### f. Common Law Trademark Infringement

"Common law tradename infringement falls within a broader category of prohibited unfair competition. At the heart of cases alleging trademark infringement ... are two questions: Has a protectable right been created? Has it been infringed?" A.L.M.N. Inc. v. Rosoff, 757 P.2d 1319, 1321 (Nev. 1988). As laid out in A.L.M.N., the standard for common law infringement mirrors that for federal trademark infringement under the Lanham Act. See A.L.M.N. Inc. v. Rosoff, 757 P.2d 1319, 1321 (Nev. 1988) (adopting federal standard and citing numerous federal cases interpreting the Lanham Act). Finding no differences sufficient to merit separate analysis, the Court incorporates its analysis and finding as to federal trademark infringement.

### g. Permanent Injunction

Having established statutory violations creating the possibility of injunctive relief, the Plaintiffs' claim must nonetheless satisfy the equitable requirements for a permanent injunction. See eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 394 (2006) (requiring application of "traditional four-factor framework that governs the award of injunctive relief" to a copyright infringement claim); Herb Reed Enterprises, LLC v. Florida Entertainment Management Inc., 736 F.3d 1239, 1249 (9th Cir. 2013) ("Following eBay . . . we held . . . that actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action."). "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay, 547 U.S. at 391.

#### i. Irreparable Injury and Remedies at Law Inadequate

"Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001). Plaintiffs' well-pled facts include the assertion that after twice claiming that they had removed the infringing products in May 2013, Mr. Raytchev

and Valio resumed selling infringing products sometime before December 10, 2013. Compl. at ¶ 52-55. In establishing trademark infringement, the plaintiffs have shown a likelihood of confusion as to the origin of the infringing products, and thus a potential loss of prospective customers, as well as harm to reputation and goodwill if the products are inferior. As such, the Plaintiffs have adequately shown irreparable injury.

Damage to reputation and loss of customers are intangible harms not adequately compensable through monetary damages. While the statute states that injunctive relief shall be "subject to the principles of equity," the explicit invocation of injunctive relief in the statute suggests recognition of the high likelihood of infringement violations not compensable by monetary damages. See 15 U.S.C. § 1125(c)(1).

### ii. Balance of Hardships

Defendants Valio, LLC, and Valentin Raytchev have failed to in any way appear or respond to this case. On the well-pled facts, which the Court accepts as true upon entry of default, the Court has found violations of multiple trademark laws. Plaintiffs have suffered irreparable harm not adequately compensable at law, and Defendants have failed to in any way respond or assert defenses or hardship. As such, considering the balance of hardships, a permanent injunction is warranted.

### iii. Public Interest

The trademark statutes at issue explicitly invoke the possibility of injunctive relief, which would serve the public interest of vindicating trademark laws intended to encourage innovation. There are no exceptional facts at issue that show that an injunction would be against the public interest.

Therefore, the Court finds that Plaintiffs have met the statutory and equitable requirements for permanent injunctive relief as to the trademark violations asserted in the complaint.

### 3. The Sufficiency of the Complaint

Returning to the factors considered for an order granting default judgment, the Court considers: (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the

possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The Court has found that Plaintiffs have established the alleged claims based upon the alleged facts in the complaint. As such, the sufficiency of the complaint requirement has been met.

### 4. The Sum of Money at Stake in the Action

Plaintiffs seek only injunctive relief. The Court considers grounds for granting injunctive relief on default judgment below.

### 5. The Possibility of a Dispute Concerning the Merits

As these Defendants have never appeared or responded, default has been entered, and the Court now takes well-pled facts as true, this factor supports an order of default judgment.

### 6. Whether Default was Due to Excusable Neglect

Defendants received service of Summons over two years ago. See ECF Nos. 7-8. Defendants have never appeared or responded, default has been entered, and there is no indication of excusable neglect. As such, this factor supports an order of default judgment.

### 7. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits.

Where Defendants have never appeared or responded, a decision on the merits is not possible. Denying default judgment on this factor in this context would preclude default judgment whenever a Defendant fails entirely to participate in a lawsuit. Thus this factor cannot weigh against a finding of default.

### 8. Injunctive Relief Pursuant to Default Judgment

The trademark laws of the United States vest the court with the power to grant injunctive

1  relief. 15 U.S.C. § 1116. As discussed above, Plaintiffs' claim meets the equitable requirements
2  for injunctive relief, and Plaintiffs would suffer irreparable harm not compensable at law if not
3  granted injunctive relief. As Defendants have failed to appear or respond, the relief can only be
4  granted pursuant to default judgment.

5  Therefore, the Court finds that all factors support an order granting default judgment, and
6  permanent injunctive relief pursuant to that order.

7  **V. CONCLUSION**

8  Therefore, **IT IS ORDERED** that Plaintiffs' Motion for to Correct Clerical Mistakes and
9  Oversight (ECF No. 41) is GRANTED.

10  **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Default Judgment (ECF No.
11  35) is GRANTED. The Clerk of Court is instructed to enter an amended judgment in favor of
12  Plaintiffs and against Defendants Valentin Raytchev and Valio, LLC.

13  **IT IS FURTHER ORDERED** that Valentin Raytchev and Valio, LLC, and their agents,
14  servants, employees, and all persons acting under their permission and authority, effective
15  immediately upon entry of this Order, are permanently enjoined from:

16  (a) using in any manner CAR-FRESHNER, car freshener, BLACK ICE and ICE BLUE,
17  or any confusingly similar word or phrase, as part of a trade name, trademark or
18  Internet domain;
19  (b) using, distributing or disseminating in any manner Plaintiffs' Tree designs, the
20  Infringing Design, or any design that is confusingly similar thereto for any product or
21  trademark;
22  (c) using or disseminating any other trade name or trademark that is confusingly similar
23  to Plaintiffs' Marks.

24  **IT IS FURTHER ORDERED that** Valentin Raytchev and Valio, LLC, their agents,
25  servants, employees and all persons acting under their permission and authority, are directed to,
26  within 21 days of entry of this Order:

27  (a) deliver up to Plaintiffs, all printed material and products in their possession or under
28  their control that contain CAR FRESHNER, car-freshener, BLACK ICE, ICE

BLUE or the Infringing Design as part of a trade name, trademark, product design, or Internet domain, including but not limited to any signs, advertisements, promotional or sales literature, letterhead, business forms, cards, labels, packages, wrappers, pamphlets, and brochures; and

(b) remove all CAR FRESHNER, car-freshener, BLACK ICE, ICE BLUE or the Infringing Design from any materials within Defendants control, including all websites and Internet postings.

**DATED**: December 14, 2016.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**